IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 1, 2015

**STATE OF TENNESSEE v. FELIX HALL**

**Appeal from the Criminal Court for Shelby County**
**No. 1205589     James C. Beasley, Jr., Judge**

_____

**No. W2014-02199-CCA-R3-CD  -  Filed November 10, 2015**

_____

Appellant, Felix Hall, was convicted of theft of property valued at $10,000 or more but less than $60,000; burglary of a building other than a habitation; and theft of property valued at $500 or less.  The trial court sentenced him to an effective term of twenty-seven years.  On appeal, appellant contends that the trial court should have granted a mistrial during the State's rebuttal closing argument and that the evidence was insufficient to support his convictions.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Stephen C. Bush, District Public Defender; and Phyllis Aluko (on appeal) and Michael J. Johnson (at trial), Assistant District Public Defenders, for the Appellant, Felix Hall.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy M. McEndree, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On May 22, 2012, the police stopped appellant while he was driving a stolen Freightliner tractor-truck.  In the truck's cab, the police found a box of partially frozen chicken breasts in a box labeled "Wendy's."  The police learned that a Wendy's restaurant had recently been burglarized.  Based on this conduct, the grand jury indicted

appellant for theft of property valued between $10,000 and $60,000; burglary of a building other than a habitation; and theft of property valued at $500 or less.

At appellant's June 2014 trial, William Godfrey testified that he was the fleet manager for Le-Mar Holdings. He said that in April 2012, his company purchased sixteen tractor-trucks at auction that were then sent to Le-Mar's satellite yard in Memphis. Mr. Godfrey explained that he hired a driver to take one of those tractor-trucks, a 2005 Freightliner, from Memphis to Texas but that the driver discovered that the tractor-truck was not on the lot. He stated that the lot was enclosed by a fence and secured by a locked gate. On May 14 or 15, Mr. Godfrey reported to the Memphis Police Department that the tractor-truck had been stolen. He testified that the Freightliner was bought at auction for $20,000. Mr. Godfrey said that when the company bought the tractor-truck, it had new wheels and tires on it but that when the police returned it to him, he noticed that the wheels and tires had been replaced. He also said that the fuel had been drained. Mr. Godfrey testified that he did not give appellant permission to take the Freightliner.

On cross-examination, Mr. Godfrey agreed that he believed the tractor-truck had been stolen sometime between May 2 and May 11. On re-direct examination, Mr. Godfrey said that the truck lot's gate was locked with a padlock that could be purchased at a hardware store. When showed a photograph of a Master Lock padlock, he stated that he could not be certain it was the same lock. He further stated that the photograph "represent[ed] what would ha[ve] been on the gate."

Memphis Police Officer Hardy D. Savage III testified that he received information that a maroon Freightliner tractor-truck had been stolen. He found the vehicle, which did not have any tags, and initiated a traffic stop. Officer Savage testified that appellant was driving the vehicle. He said that he processed the vehicle identification number ("VIN") and learned that the number had been labeled as a stolen vehicle. Officer Savage stated that he found a cut lock, a pair of bolt-cutters, and a box of "slightly still frozen" chicken breasts in the cab of the truck. The box of chicken had a label from Wendy's restaurant. He also found a bag of personal hygiene items and a box of ammunition. Officer Savage testified that a white female was in the passenger seat when he stopped the Freightliner.

On cross-examination, Officer Savage stated that he could not recall whether the tractor-truck had keys or whether there was any damage to the steering column. He did not remember whether appellant or his passenger said anything about a hotel.

Linda Curtis testified that she was a manager of the Wendy's restaurant on Elvis Presley Boulevard. She recalled that on May 22, 2012, she was driving home after closing the restaurant at 1:00 a.m. when she received a telephone call from the district manager, who told her that the restaurant's alarm was sounding. She returned to the store

-2-

and found that the lock on one of their exterior storage buildings had been cut. Ms. Curtis said that she checked the contents of the building against her most recent inventory and learned that less than $500 worth of chicken was missing.

Memphis Police Officer Mark Gilbertson testified that he responded to the Wendy's restaurant on Elvis Presley Boulevard at approximately 5:00 a.m. on May 22, 2012. He said that of the three locked storage units on the property, two had their locks cut. The locks were located within two feet of the doors of the storage units. Officer Gilbertson processed the area for fingerprints but only located one partial print from one of the units. On cross-examination, he agreed that the partial print was on the door handle of the unit.

Memphis Police Officer Nathan Gathright testified that he examined the fingerprint card that Officer Gilbertson submitted from Wendy's but that there was no usable detail on the "lifts" that he could use to make comparisons.

Memphis Police Detective James Harden testified that in May 2012, he had been assigned to the Memphis Cargo Theft Task Force, which investigated the thefts of tractor-trucks among other duties. Because he was already investigating the theft of Le-Mar Holdings' Freightliner, he responded to the scene of appellant's traffic stop. He confirmed that the VIN of the tractor-truck that appellant had been driving matched that of the stolen vehicle. Detective Harden testified that the contents of the vehicle were inventoried and included bolt cutters, a box of chicken, and a padlock. He said that the chicken was in a box labeled "Wendy's" and that the chicken was "still frozen and cold." He then clarified, "Maybe not frozen but cold."

On cross-examination, Detective Harden testified that he spoke with appellant the night of his arrest. When asked if, as a result of that conversation, he continued his investigation at an American Inn, Detective Harden replied in the negative. Detective Harden recalled speaking with appellant's passenger and stated that she was not arrested. Detective Harden testified that he did not remember whether keys were recovered along with the Freightliner or whether the tractor-truck had been "hot[-]wired." On re-direct examination, Detective Harden testified that no one gave him information that would have caused him to investigate anything at the American Inn.

Following Detective Harden's testimony, the State rested its case-in-chief. Appellant then testified on his own behalf. Appellant testified that he received the key to the Freightliner from Eric Davis, a man with whom he used cocaine. He said that Mr. Davis lived at the American Inn on Elvis Presley Boulevard. Appellant said that he had seen Mr. Davis driving the Freightliner a week prior to appellant's arrest. Appellant testified that he did not know that the Freightliner was stolen. He said that on the morning that he was arrested, around 8:00 a.m., he went to Mr. Davis's hotel room.

Sherry Hutchensen was also there. He said that he and Ms. Hutchensen later left the hotel to retrieve money from a Western Union and that they took the Freightliner for this errand. Appellant stated that he was stopped by the police before they found the Western Union. Appellant testified that Ms. Hutchensen told him that she had told a police officer that Mr. Davis had given appellant the key to the Freightliner. He said that she also told the officer that Mr. Davis lived at the American Inn. Appellant said that he did not notice that the Freightliner did not have a license plate. Appellant testified that he did not break into Wendy's restaurant nor did he have any knowledge of that theft.

On cross-examination, appellant said that driving the Freightliner was "normal" to him because he was a truck driver. He claimed that "if anybody can drive a stick, they should be able to drive that truck." Appellant testified that he told the police about Mr. Davis.

Appellant rested his case after his testimony. The State then called four witnesses in rebuttal. The first, Nikunj Patel, testified that he was the general manager at the American Inn on Elvis Presley Boulevard. Mr. Patel explained that when a customer checks in at the hotel, the customer must present a photograph identification, and the front desk personnel types all of the information from the identification into the hotel's computer system. Mr. Patel testified that he searched the hotel's records for the names Eric Davis, Felix Hall, and Sherry Hutchensen. He did not find any records under those names. On cross-examination, Mr. Patel agreed that someone could stay in a room that had been rented by someone else.

Linda Curtis, the Wendy's restaurant manager who testified during the State's case-in-chief, testified that she had been mistaken about the timing of the burglary. She recalled that when she returned to the store because of the burglary, she remained at the store until after 8:00 a.m.

Officer Savage testified that when he encountered appellant and Ms. Hutchensen, neither of them mentioned Eric Davis or the American Inn. He recalled appellant's telling him that Ms. Hutchensen "didn't have anything to do with this."

Detective Harden testified that a Commercial Driver's License was required to drive a vehicle like the Freightliner in this case. He said that shifting gears was different than shifting gears in a normal vehicle because of the double-clutch system. Detective Harden testified that appellant never mentioned the American Inn during the investigation.

Following the close of proof and deliberations, the jury convicted appellant as charged of theft of property valued at $10,000 or more but less than $60,000; burglary of a building other than a habitation; and theft of property valued at $500 or less. The trial

court sentenced him to fifteen years as a persistent offender for the felony theft of property conviction; to twelve years as a career offender for burglary of a building other than a habitation; and to eleven months, twenty-nine days for misdemeanor the theft of property conviction. The trial court ordered the two felony convictions to be served consecutively to each other for an effective sentence of twenty-seven years. Appellant now appeals his convictions.

## II. Analysis

Appellant presents two issues for our review. First, he argues that the trial court erred when it did not declare a mistrial nor give proper curative instructions during the State's closing argument. Secondly, he contends that the evidence was insufficient to support his convictions.

## A. Closing Argument

Appellant argues that the State committed two instances of prosecutorial misconduct during closing argument that should have led to the trial court's declaring a mistrial. He argues in the alternative that the trial court should have given a proper curative instruction. The State responds that appellant is not entitled to relief because he did not contemporaneously request a mistrial during the first instance of alleged prosecutorial misconduct and made no contemporaneous objection to the second instance. The State further responds that the curative instructions given by the trial court were adequate. We agree with the State that the curative instruction given by the trial court was sufficient and that appellant has waived any argument regarding the second instance.

"[A]rgument of counsel is a valuable privilege that should not be unduly restricted." *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). Tennessee courts give great latitude to counsel arguing their cases to the jury. *Id.* Thus, "trial judges have wide discretion in controlling the argument of counsel, and their action will not be reviewed absent abuse of that discretion." *Id.* However, the comments of counsel during closing argument "'must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried.'" *State v. James Rae Lewter*, No. M2010-01283-CCA-RM-CD, 2011 WL 1197597, at *4 (Tenn. Crim. App. Mar. 31, 2011) (quoting *State v. Gann*, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007)).

"A criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument." *State v. Banks*, 271 S.W.3d 90, 131 (Tenn. 2008) (citing *United States v. Young*, 470 U.S. 1, 11-13 (1985); *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001) (holding that a prosecutor's improper closing argument does not automatically warrant reversal)). To establish reversible error and succeed on a claim of

prosecutorial misconduct, the appellant must show that "the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." *State v. Farmer*, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996) (citing *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965)).

When determining whether the argument affected the jury's verdict, we consider the following five factors:

> (1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

During rebuttal closing argument, the State made the following remark:

> First thing I want you to do, look in the definition of knowingly. Because [defense counsel] has told you that I have to prove to you, the State has to prove to you that the defendant absolutely knew that the truck was stolen and that's not true. The law says that the defendant knowingly obtained or exercised control. And look at the definition of knowingly that the Court read you. And the definition of knowingly is not that the defendant absolutely knew it was stolen, that's not the definition. The definition is that a person acts knowingly when --

Defense counsel asked for a bench conference and during the conference objected to the State's "saying that what [he] said [was] not true[.]" He further said that it was "improper" for the State "to say [he] misstated the law." The court's response was to give the following curative instruction:

> All right, ladies and gentlemen, let me just say this to you, you get the law from me. I've given it to you, that's the law you're to consider. What the lawyers say is not the law. You get the law from me . . . .

The second instance about which appellant complains was the State's comment in its rebuttal closing argument that appellant's testimony was a "web of lies." Appellant made no objection and did not include this comment in its motion for new trial.

To begin our analysis, we first note that appellant frames his argument as an assignment of error to the trial court for its failure to declare a mistrial as a remedy when appellant objected to the State's closing argument. While the State argues on appeal that appellant waived the issue for failing to request a mistrial, we conclude that appellant sufficiently preserved the issue for our review of the first instance. However, appellant made no contemporaneous objection to the second instance, in which the State referred to appellant's testimony as a "web of lies," nor did he include this issue in his motion for new trial. Therefore, appellant has waived appellate review of the second instance. *See* Tenn. R. App. P. 3(e) ("[N]o issue presented for review shall be predicated upon error in the . . . misconduct of jurors, parties or counsel . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Because appellant merely objected to the State's closing argument and did not specifically request a mistrial as a remedy, instead leaving the choice of remedy to the trial court, we will consider whether the State committed prosecutorial misconduct egregious enough to require a new trial for appellant. Here, appellant complains that the State told the jury that defense counsel had misstated the law when the State said, "Because [defense counsel] has told you that I have to prove to you, the State has to prove to you that the defendant absolutely knew that the truck was stolen and *that's not true*." (emphasis added). During the bench conference, the State claimed that it was trying to focus the jury on the definition of "knowingly." We note that defense counsel was concerned with the State's declaration that defense counsel had misstated the law, not with the content of the State's argument, which was otherwise proper. In response to appellant's objection, the trial court instructed the jury that the jury would receive the law from the trial court and that the jury was not to consider the law as stated by the attorneys.

The trial court's curative instruction served to remind the jury that the court was to be the sole source of law for the jury. The curative instruction thus ameliorated any suggestion by the State that defense counsel's summary of the law was incorrect. The State's comments might have offended defense counsel, but there is nothing about the comments that was "so inflammatory or . . . so improper that it affected the verdict to [appellant's] detriment," especially in light of the case as a whole. *State v. Farmer*, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996). While appellant now claims that the curative instruction was insufficient, "[i]f a party fails to request a curative instruction, or, if dissatisfied with the instruction given and does not request a more complete instruction, the party effectively waives the issue for appellate purposes." *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997) (citations omitted). We conclude that

appellant is not entitled to relief because the case against appellant was strong, the State did not appear to have any nefarious intent, and the trial court gave a curative instruction.

## B. Sufficiency

Appellant argues that the evidence was insufficient to support his convictions. In particular, he notes that there were no eyewitnesses to either theft or the burglary, that there was no forensic evidence tying him to the burglary, and that the chicken would not have still been frozen if it had been taken five hours previously. He also contends that the State did not prove that he knew the tractor-truck was stolen.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

As charged in this case, "[a] person commits burglary who, without the effective consent of the property owner[,][e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault . . . ." Tenn. Code Ann. § 39-14-402(a)(1). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). Appellant was charged with both a Class C felony theft, which is theft of property valued at $10,000 or more but less than $60,000, and a Class A misdemeanor theft, which is theft of property valued at $500 or less.

Viewed in the light most favorable to the State, the evidence at trial showed that appellant was arrested after a traffic stop in which he was found driving a tractor-truck that had been taken without permission from Le-Mar Holdings' lot several days previously. Le-Mar Holdings had purchased the tractor-truck for $20,000 at auction. Inside the tractor-truck was a box of chicken, a pair of bolt-cutters, and a padlock that had been cut. The box of chicken was labeled "Wendy's." Testimony showed that police had recently responded to a nearby Wendy's restaurant and found the padlocks cut from at least one of their storage buildings. The manager of the restaurant discovered that a box of chicken worth less than $500 had been taken. The investigating detective testified that the chicken in the tractor-truck was still cold. The detective also testified that special knowledge was required to drive the stolen tractor-truck, and appellant, as a truck driver, had the necessary skill to drive it. "Possession of recently stolen goods gives rise to an inference that the possessor has stolen them [and] may also be sufficient evidence to sustain a conviction for burglary." *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Thus, it was reasonable for the jury to infer from appellant's possession of the Wendy's chicken and a pair of bolt-cutters that he was responsible for the burglary of Wendy's and the theft of the chicken, especially when the chicken was still cold from being frozen. While the tractor-truck could not be reasonably categorized as "recently stolen," it was the jury's prerogative to discredit appellant's account of how he came to be in possession of the tractor-truck and to infer from all of the circumstances that appellant, who did not have consent to take the truck from its owner but was found driving the truck, had knowingly obtained or exercised control of the truck with intent to deprive the owner of the truck. Therefore, we conclude that the evidence was sufficient to sustain appellant's convictions.

## CONCLUSION

Based on the briefs of the parties, the record, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE
